UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| THERESSA C. LEVINE, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:21-cv-00254 |
| ARS NATIONAL SERVICES, INC., | |
| Defendant. | DEMAND FOR JURY TRIAL |

## COMPLAINT

NOW COMES Plaintiff, by and through her counsel, James C. Vlahakis, and submits the following claims against Defendant pursuant to Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq*:

### I. Jurisdiction, Parties and Venue

1. Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

2. Subject matter jurisdiction is conferred upon this Court by Section 1692k(d) of the FDCPA as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Plaintiff is a citizen of the State of Texas and resides in or around Beaumont, Texas.

4. Defendant ARS NATIONAL SERVICES, INC. ("ARS"), is a California based debt collector and otherwise licensed to collect debts within the State of Texas.

5. ARS can be served at its headquarters at 201 West Grand Avenue, Escondido, California 92025.

6. ARS's principal purpose is the collection of past-due and defaulted debts owed by natural persons to others where the debts were incurred primarily for personal, family or household purposes. ARS uses the mails, telephone, the internet and other instruments of interstate commerce to collect consumer debts.

7. For example, ARS sent a letter to Plaintiff dated October 24, 2020, in which Defendant claims that Plaintiff allegedly incurred and owed a certain financial obligation to "JPMorgan Chase Bank, N.A.", the so-called "Creditor", originating from one or more transactions which were primarily for the Plaintiff's personal use (hereafter the "Subject Debt").

8. Venue is proper pursuant to 28 U.S.C. §1391 because Defendant conducts substantial debt collection activities in this judicial district by and through the transmission of collection letters to consumers like Plaintiff.

## II.  Summary of the FDCPA

9. Section 1692 of the FDCPA contains "Congressional findings" and a "declaration of purpose" and states as follows:

> **(a) Abusive practices**
>
> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
>
> **(b) Inadequacy of laws**
>
> Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
>
> **(c) Available non-abusive collection methods**
>
> Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.
>
> **(d) Interstate commerce**

> Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.
>
> **(e) Purposes**
>
> It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

*See*, 15 U.S.C. § 1692.

10. One purpose of the FDCPA was to address "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

11. In enacting the FDCPA, Congress determined that "[a]busive debt collection practices contribute to" societal harms, including increasing "the number of personal bankruptcies," "marital instability," "the loss of jobs," and "invasions of individual privacy." 15 U.S.C. § 1692(a).

12. Congress determined that "[e]xisting laws … are inadequate to protect consumers" and that "[m]eans other misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. §§ 1692(b)-(c).

13. The FDCPA provides that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c).

14. Congress enacted the FDCPA to protect ethical debt collectors from being competitively disadvantaged by debt collectors who do not abide by the prohibitions set forth by the FDCPA. 15 U.S.C. § 1692(e).

15. The FDCPA's statutory findings explicitly identify "invasions of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

16. Section 1692c(b) of the FDCPA, titled "Communication with third parties," protects "consumers" from having their status as a person "obligated or allegedly obligated to pay any debt" communicated to third-parties without the consent of the consumer. *See, e.g., Hunstein v. Preferred Collection & Mgmt. Servs.*, 994 F.3d 1341, 2021 U.S. App. LEXIS 11648 (11th Cir. 2021).

17. "[I]nvasions of personal privacy have been regarded as a valid basis for tort suits in American courts." *Hunstein,* 2021 U.S. App. LEXIS 11648 at *8 (citing *Pavesich v. New England Life Ins. Co*., 122 Ga. 190, 50 S.E. 68 (1905); *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911); *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918)).

18. "[T]he existence of a right of privacy is now recognized in the great majority of the American jurisdictions that have considered the question." *Id.* (quoting Restatement (Second) of Torts § 652A cmt. a. (Am. Law Inst. 1977)).

19. "[T]he term 'invasion of privacy' comprises an identifiable family of common-law torts—including, most relevantly here, 'public disclosure of private facts.' Invasion of Privacy, Black's Law Dictionary 952 (10th ed. 2014)." *Id.* at *8-*9.

20. "It is hornbook law that '[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.' Restatement (Second) of Torts § 652D (1977)." *Id.* at *9.

21. "[T]he Supreme Court itself has recognized 'the individual interest in avoiding disclosure of personal matters' and has recognized that 'both the common law and the literal

understandings of privacy encompass the individual's control of information concerning his or her person.'" *Id.* (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989) (citation and quotation marks omitted)).

22. The tort of "invasion of privacy" comprises an identifiable family of common-law torts—including, most relevantly here, "public disclosure of private facts." INVASION OF PRIVACY, BLACK'S LAW DICTIONARY 952 (10th ed. 2014). It is hornbook law that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." RESTATEMENT (SECOND) OF TORTS § 652D (1977). *See also*, 77 C.J.S. RIGHT OF PRIVACY AND PUBLICITY § 32; 62A AM. JUR. 2D PRIVACY § 79.

23. Texas law recognizes torts for the invasion of privacy by disclosure of public facts and intrusion into the private affairs of natural persons. *See, e.g., Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 48-49 (Tex. App.-Corpus Christi 2001).

24. Section 1692c(b) of the FDCPA, titled "Communication with third parties," states as follows:

> *Except as provided in section 1692b of this title*, <u>without the prior consent of the consumer *given directly to the debt collector*</u>, ... *a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer*, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b) (emphasis supplied).

25. Section 1692b provides as follows:

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—
 (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
 (2) not state that such consumer owes any debt;
 (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;
 (4) not communicate by post card;
 (5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and
 (6) after the debt collector knows the consumer is represented by an attorney with regard to the Subject Debts and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C. § 1692b.

26. Section 1692b relates to the manner in which a debt collector may lawfully communicate "with any person *other than the consumer* for the purpose of acquiring location information." 15 U.S.C. § 1692b (emphasis supplied).

27. Section 1692a(7) defines the term "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment".

28. Defendant's transmission of Plaintiff's personal information and her status as a debtor/consumer to Defendant's letter vendor did not constitute an attempt to obtain "location information" related to Plaintiff.

### III. Defendant's Collection Activities

29. The Subject Debt was incurred for personal expenses.

30. Plaintiff is a "consumer" as defined by § 1692a(3) of the FDCPA because Defendant regarded her as being a natural person obligated or allegedly obligated to pay any debt.

31. The Subject Debt is a "debts" as defined by § 1692a(5) of the FDCPA because Defendant regarded the Subject Debt as an obligation or alleged obligation to pay money arising out of a transaction in which the money, property, or services were incurred for personal, family, or household purposes.

32. Plaintiff intended to pay off the Subject Debt but financial circumstances prevented her from paying off the Subject Debt when the Subject Debt was still owned by the original creditor.

33. ARS's October 24, 2020 collection letter claimed that Plaintiff owed $1,898.12 to the creditor, JPMorgan Chase Bank, N.A..

34. ARS's October 24, 2020 collection letter was an attempt to collect the Subject Debt.

35. ARS's October 24, 2020 collection letter was a "communication" as defined by § 1692a(5) of the FDCPA because the collection was a means the conveying of information regarding the Subject Debt.

36. ARS acted as debt collector in attempting to collect Subject Debt on behalf of JPMorgan Chase Bank, N.A. by and through the use of a form/template collection letter.

37. Generally speaking, in using a form/template collection letter, ARS caused Plaintiff's name, address, the name of the creditor, the amount owed, the so-called "transaction date", account number for the creditor and ARS's referenced number to be inserted into form/template collection letter.

38. ARS used a third-party letter vendor to mail the October 24, 2020 collection letter to Plaintiff.

39. ARS's operating system/software involves sending a debtor/consumer's demographic information, as well as the existence and the amount of the subject debt, to ARS's third-party letter vendor for the purpose of causing the letter vendor to merge this information into letter templates that ARS uses to collect consumer debts.

40. Plaintiff did not consent to having ARS share her personal information or her status as a debtor with ARS's letter vendor or any third-parties.

41. Sharing personal information of a consumer with third-parties violates Section 1692c(b) of the FDCPA. *See*, *Hunstein v. Preferred Collection and Management Services, Inc.*, 994 F.3d 1341 (11th Cir. 2021).

## COUNT ONE

### Class Action Violations of § 1692c(b) of the FDCPA Resulting From Defendant's Sharing of Plaintiff's Personal Information and her Status as a Debtor

42. Plaintiff, repeats and re-alleges Paragraphs 1-41 as though fully set forth herein.

43. Section 1692c(b) with certain inapplicable exceptions, prohibits debt collectors from communicating consumers' personal information to third parties "in connection with the collection of any debt."

44. As discussed above and below, Defendant violated Section 1692c(b) when it used a third-party vendor to mail the October 24, 2020 collection letter to Plaintiff.

45. Defendant violated Section 1692c(b) when it used a third-party vendor to mail the October 24, 2020 collection letter to Plaintiff because by using a third-party vendor to mail out the letters, Defendant disclosed Plaintiff's personal contact information and information identifying the Subject Debt to Defendant's letter vendor.

46. ARS's transmittal of Plaintiff's personal information, Plaintiff's purported status as a debtor relative to a debt allegedly owed to JPMorgan Chase Bank, N.A., and the amount of the

Subject Debt to Defendant's letter vendor constitutes a "communication" within the meaning of Section 1692a(2) which defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

47. Defendant's use of a third-party letter vendor to merge Plaintiff's demographic data and status as a debtor into Defendant's form collection letters for the purpose of printing and mailing the October 24, 2020 collection letter to Plaintiff violated Section 1692c(b).

48. ARS's disclosure of Plaintiff's personal information and her status as a purported debtor posed a material risk of harm to the privacy interests protected by the FDCPA.

49. ARS's disclosures of Plaintiff's personal information and status as a purported debtor to its third-party letter vendor violated Plaintiff's rights privacy that was recognized by Congress when it enacted the FDCPA.

50. ARS's transmittal of Plaintiff's personal information and information identifying the Subject Debt to its letter vendor was not done in an attempt to comply with Section 1692b.

51. ARS's disclosure to its letter vendor of Plaintiff's personal information and her purported status as a person owing the Subject Debt violated Section 1692c(b)'s prohibition on disclosure of debtor information to third-parties

52. Section 1692c(b) bears a close relationship to a privacy invasion that American courts have long recognized as cognizable.

53. Congress's judgment indicates that violations of Section 1692c(b) constitute a concrete injury.

54. As set forth above, ARS's disclosures to its third-party letter vendor (of Plaintiff's personal information and status as a purported debtor) caused Plaintiff to suffer from embarrassment, aggravation and emotional distress.

55. Accordingly, Plaintiff has standing to sue ARS for its improper and unlawful disclosure of Plaintiff's personal information and status as a debtor to third-party letter vendors.

56. The claims asserted in this Count satisfy the elements of FRCP 23(a)(1)-(4) and FRCP 23(b)(3).

57. The proposed class encompasses:

> (a) all consumers with addresses in the State of Texas;
>
> (b) where Defendant utilized form collection letters for the purposes of attempting to collect to a consumer based debt allegedly owed to to JPMorgan Chase Bank, N.A;
>
> (c) where Defendant used a third-party letter vendor to transmit the collection letters; and
>
> (d) Defendant's use of a third-party letter vendor resulted in Defendant sending the demographic information of the subject consumers as well as their status as alleged debtors to the letter vendor in violation of Section 1692c(b) of the FDCPA.

58. Defendant is not entitled to invoke arbitration, because upon information and belief, the Subject Debt is not governed by an arbitration clause.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant ARS as follows:

a. Declaring that the practices complained of herein are unlawful;

b. Awarding Plaintiff and class members statutory damages of $1,000.00 as provided under 15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(a)(2)(B);

c. Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

d. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demand a trial by jury of any and all issues in this action so triable of right.

|  |  |
|---|---|
| | Respectfully submitted, |
| | **Counsel for Plaintiff** |
| Dated: 5/26/2021 | */s/* Omar T. Sulaiman<br>Omar T. Sulaiman<br>Sulaiman Law Group, Ltd.<br>2500 S. Highland Ave., Suite 200<br>Lombard, IL 60148<br>Phone: (630) 575-8181<br>osulaiman@sulaimanlaw.com |
| | Application to be applied for: |
| | James C. Vlahakis<br>Sulaiman Law Group, Ltd.<br>2500 S. Highland Ave., Suite 200<br>Lombard, IL 60148<br>Phone: (630) 575-8181<br>jvlahakis@sulaimanlaw.com |